## E. E. CONKRIGHT v. STATE.

No. A-3565.  Opinion Filed March 18, 1922.
(204 Pac. 1113.)

(Syllabus.)

1.  **Larceny—Grand Larceny—Sufficiency of Evidence.** Evidence examined, and held sufficient in law to sustain a verdict and judgment of guilty of grand larceny as charged in the information.

2.  **Indictment and Information—Joint Information Against Two—Allegation of Acting Together Unnecessary.** When two persons, by the same information, are charged with the larceny of one piece of property, at one time, from one owner, further allegations that they were acting together in the commission of the crime, or statements of fact showing that they were acting together, are unnecessary.

Appeal from District Court, Nowata County; W. J. Campbell, Judge.

E. E. Conkright was convicted of grand larceny, and he appeals.  Affirmed.

F. B. Hanlon, Bert Van Leuven, George, Campbell & Ray, and Howard & Beets, for plaintiff in error.

The Attorney General and E. L. Fulton, Asst. Atty. Gen., for the State.

MATSON, J.  On the 8th day of March, 1919, plaintiff in error, E. E. Conkright, hereafter referred to as defendant, was convicted in the district court of Nowata county of the crime of grand larceny and sentenced to serve a term of five years' imprisonment in the state penitentiary.  Defendant was charged with having stolen a Ford automobile from S. A. Taylor in the city of Nowata on the night of November 27 or the morning of November 28, 1918·

Three able and exhaustive briefs have been filed in this court in the behalf of the defendant, each urging that the evi-

dence is insufficient to sustain the conviction. The evidence against the defendant is wholly circumstantial, and it is contended in each of the briefs that as a matter of law the evidence is not sufficient to exclude every reasonable hypothesis but that of the guilt of the defendant.

It will be necessary in giving due consideration to this contention to unfold and discuss at considerable length the various circumstances as disclosed by the transcript of the evidence establishing the guilt of this defendant.

About 5 or 6 o'clock in the afternoon of November 27, 1918, S. A. Taylor, who resides on North Elm street in the city of Nowata, Okla., and who was the owner of a Ford touring car with wheels painted white and with a partition under the rear seat thereof made by a two by four and a two by six pieces of wood, drove the said car into the garage out on the back part of the lot at his residence.

Between 6 and 7 o'clock on the morning of November 28, 1918, the said Taylor went to his garage to get his car and found the garage door open and the car gone. He immediately notified the sheriff of Nowata county, and together with the sheriff the car was tracked for several miles north of Nowata in the direction of Coffeyville, Kan. This was on the 28th day of November, 1918 (Thanksgiving Day). There had been a rain during the night, and owing to the peculiar tread on the tires of the car the same was easily tracked. Because of a break-down in the automobile which the parties were using to track the stolen car, the parties were compelled to and did return to the city of Nowata by street car and abandoned the search for the stolen car in the afternoon of November 28, 1918.

On the Saturday immediately following, S. A. Taylor was called to the town of Oswego, Kan., to look at a Ford car which

had been captured by the sheriff of Labatte county, Kan., and there identified the car so seized as his own. He took the car into his possession and returned with it to Nowata, Okla.

The following facts are admitted as true: (1) That S. A. Taylor was the owner of the car. (2) That said car was stolen from his garage in the city of Nowata, Nowata county, on the night of November 27 or early morning of the 28, 1918. (3) That said car was recovered by him from the sheriff of Labatte county, Kan., at the town of Oswego, Kan., on Saturday November 30, 1918. (4) That said car was taken without the knowledge and consent of the said S. A. Taylor and without his connivance. (5) That said car exceeded in value the sum of $20.

Succinctly stated, it is admitted that all the elements necessary to sustain larceny were present in the taking of this automobile from Taylor. The only contention urged is that the evidence is insufficient to connect the said defendant with such felonious taking.

While the jury is the exclusive judge of the weight of the evidence and of the credibility of the witnesses, and where there is credible evidence in the record which, if believed, is sufficient to authorize the jury to conclude that the defendant is guilty of the offense charged this court will not disturb the judgment, still, it is the duty of this court to set aside a judgment of conviction if as a matter of law the evidence is wholly insufficient to sustain the verdict and judgment.

The system of trial by jury is the greatest method ever devised or conceived by the mind of man for the discovery of the truth on controverted issues of fact and for safe-guarding the rights of parties litigant. The unanimous verdict of twelve peers of the defendant who saw the witnesses face to face, observed their demeanor upon the witness stand, had full op-

portunity to investigate their credit, concurred in by the judgment of the trial judge, must of necessity carry great weight with this court in giving consideration to questions of fact.

In this court the presumption does not obtain that the appellant is innocent of the crime. On the contrary, the presumption is that he is guilty where a conviction has resulted in the trial court. The presumption also is that such a conviction is based upon competent, sufficient, and credible evidence, and the burden rests upon the defendant in the appellate court to establish the contrary. With these observations, let us revert again to the evidence, directing our attention to the defendant's connection with the alleged crime.

Defendant admits that he was in the city of Nowata on the 27th of November, 1918, but he says that he left there on a street car which left Nowata at 3 o'clock on that afternoon, and went to the town of Coffeyville, Kan., and there stayed until 8 or 9 o'clock on the morning of the 28th of November, 1918, when he and two other parties left Coffeyville, Kan., and went several miles east of that city on a hunting expedition.

Defendant is first connected with the stolen automobile on the 28th of November, 1918, at about noon. At that time the automobile was in a public highway headed north near the home of Bill Morris, a friend of the defendant, who lived some three or four miles east from the town of Edna, Kan. Defendant was seen and recognized by some persons who were hunting in that neighborhood that day. The road was extremely muddy, and no vehicle had passed along it since the day before. No other car was seen in that vicinity at that time except this stolen car. Besides the defendant, a young man, Glen Roy, was in the car. The defendant was not seen in the car, but when first seen was walking along the public highway from the direction where the car stood towards the

house of Bill Morris. He was seen to walk up to the house of Bill Morris and knock on the door and shortly after return along the public highway toward where the automobile was standing. One of the persons who was out hunting spoke to the defendant, and defendant told him that he had brought a bunch of fellows out from Coffeyville hunting and had gone to Bill Morris' to get some gasoline for his car. The stolen car was the only car in sight at that time and was the only car that had come along that public highway that day. The parties to whom the defendant was then talking had heard the car as it labored along the muddy road for an hour or more before they saw the defendant. That this was the stolen car is not disputed, but it is contended that such facts do not show that the defendant was in possession of said car for the reason that no witness saw him in the actual physical possession of the car. We think such circumstances, together with what will be hereafter detailed, show conclusively that the defendant was exercising dominion and control over that stolen automobile at that time and did so exercise it up until the time of his arrest on the day following.

At this time let us revert to the alleged hunting trip of defendant, for it was by reason of such excursion that defendant says that he was found in the vicinity where the stolen car was seen on the morning after its theft.

Defendant says that he and the two parties with him left Coffeyville about 8 or 9 o'clock on that Thursday morning and proceeded east from that city and hunted along the road as they drove in an automobile, that they got out in the country about two miles south of where the stolen car was first seen and there separated. Why they separated is not disclosed by the record. Why the defendant took a sudden notion to abandon his hunting trip and go and see his friend Bill Morris,

uninvited and unannounced, is also not disclosed. Why the defendant should abandon the automobile and walk over two miles through the slippery, muddy roads of that vicinity is not explained. In making the opening statement to the jury, counsel for the defendant announced that his purpose was to secure gasoline for the car in which these parties had been riding as it had gotten out of gasoline, and an inner tube also needed fixing, and defendant was going up to Billie Morris', his friend, to get it fixed; and that on the way to Billie Morris' defendant ran across this stolen car. But defendant in his testimony failed to give any explanation of why he left his friends, abandoned the hunting trip, and went on foot over two miles through the muddy roads to Bill Morris' house. Certainly, if his purpose was to get gasoline for a car that was then out of gasoline and also to get an inner tube fixed for that car, he would have returned with the gasoline and the repaired inner tube; but defendant did not do either. Instead, he was found at Bill Morris' on the afternoon of the next day, Friday, and the stolen car was also found there hidden behind the barn with the license number off of it and with steel dust under the engine number on the car and a file close by. But defendant says that his connection with the car was purely that of an accommodation for the young man who was stuck in the mud. It may be here remarked that, had the defendant displayed half as much concern about his friends whom he claimed to have taken in a car that day hunting, he surely would not have abandoned them without gasoline and with an inner tube that needed fixing. The jury evidently believed, as it had a right to believe, that the defendant's story about his hunting expedition that day was a myth and that the defendant was one of the persons in possession of the stolen automobile. We think such are the rational deductions from such circumstances and conduct. While the defendant claimed to have been in the

city of Coffeyville on the night of November 27th and 28th, all of that night, and produced some witnesses who claimed to have seen him there on that occasion, none of the persons whom defendant claims went with him on the hunting trip were present in court. The defendant introduced, however, the deposition of one of said parties which is as follows:

On the 27th day of November, 1918, he resided in Coffeyville, Kan.; that he was acquainted with the defendant E. E. Conkright; that they were together in Coffeyville, Kan., from 5 o'clock in the evening on the 27th day of November, 1918, all night that night, and during the evening planned a hunting trip over east of Coffeyville, and the next morning about 9 o'clock, the defendant E. E. Conkright, and Wallie Gaverick and the witness, Sam Blake, started on said trip going about three miles east of Edna, Kan., and a mile north of said place, reaching there shortly after noon hunting along the way; that witness and defendant Conkright were together practically all the time from 5 o'clock in the evening of November 27, 1918, to about noon of the 28th. That neither of the parties, to wit, defendant Conkright or witness Blake, were in Nowata, Okla., either the night of November 27th, or up to noon of the 28th; that defendant Cronkright was in Coffeyville from 5 o'clock in the afternoon of November 27, 1918, all night that night, and went on said hunting trip to the point named above with said parties the forenoon of the 28th, and was with witness all that forenoon.

It will be noted that this witness said nothing about the defendant separating from the others while on the hunting trip. And another peculiar circumstance in connection with this witness' deposition is the fact that he claims the defendant slept all night with him in the town of Coffeyville on the night the car was stolen, while the defendant testified that he had a wife and four children living in the town of Coffeyville at that time. In considering the circumstantial evidence and the weight to be given it and the conclusiveness of it, the jury

has a right also to consider the defense interposed. Had the defendant interposed no defense, but had left the state's case as the only evidence against him, he would be in a much better position to contend that the evidence was insufficient to convict. But where the defendant does interpose a defense, and that defense is apparently based upon falsehood, the jury then necessarily and properly so resolve all inferences from the circumstances disclosed most strongly against the defendant. This is a natural consequence of a fabricated defense. We think without question that the defendant and his codefendant, Glen Roy, fabricated this defense. Glen Roy testified for the defendant, waived immunity, and his evidence was substantially as follows: That he lived about seven miles east of Nowata and had lived there four years. That the first time he ever saw defendant Conkright was on Thanksgiving Day, 1918. That at that time witness was about seven miles south of Altamont, Kan. That he had driven a car through up there for a fellow—a Ford car. That the fellow turned the car over to him between Nowata and Delaware. That when he met Conkright about seven miles south of Altamont, Conkright was walking along the road, and witness was stuck in a mud hole with the car and asked Conkright to help him. That there was a casing down on the car, and he couldn't get any farther. That Conkright helped him out of the mud hole. That he saw a couple or three fellows along there about noon or 1 o'clock that day. That when he first got the car between Nowata and Delaware that he went from there to Delaware, from Delaware to Lenapah, and from Lenapah to South Coffeyville. That Conkright was never in the car, and that he never told Conkright the car was a stolen car.

On cross-examination witness testified that he was arrested at Bill Morris' house about 4 o'clock on Friday evening after Thanksgiving. That he had stayed at Bill Morris' all night

the night before. That Conkright stayed at Bill Morris' on Thanksgiving night. That the car was delivered to him near California Creek between Nowata and Delaware. That he did not know who delivered it to him. That the fellow instructed him to take the car to Parsons, Kan., and to deliver it. But witness could not remember the name of the person to whom he was to deliver the car. That he did not give him any street address, but witness was to see if he could find the fellow. That he got out of the mud hole about 4 o'clock on Thanksgiving afternoon and then drove the car up to Bill Morris' house and put it in behind the barn, and ate supper there and went to bed about 8 or 9 o'clock, and ate breakfast and dinner there the next day, and went to bed again after dinner about 1 o'clock, and was found in bed by the sheriff when arrested about 4 o'clock. That he and Conkright did not stay in the same room. Conkright was arrested downstairs and witness upstairs. That Conkright was not in bed when witness came downstairs. That he was to deliver the car at Parsons on Saturday, and at the time of his arrest was about 25 or 30 miles from Parsons. Witness was then asked the following questions:

Q. Didn't you tell him, the county attorney, that you had come up to Coffeyville to get some money from Dave Etchens, to go over to the Kansas oil fields and go to work, and didn't find Dave Etchens at Coffeyville, and started to walk back to Nowata, and that Conkright overtook you driving this Ford car at the creek south of Coffeyville, and offered you a job, and you got in the car and went on with him; isn't that what you told the county attorney in the presence of under sheriff Cansdale? A. Yes, sir.

Q. Which is the facts that you told, the conditions you told the undersheriff and county attorney, or the one you now say was where Conkright was never in the car? A. Why, Conkright never was in the car.

Q. Never was in the car? A. Yes, sir.

Q. You are the only fellow that was in the car at any time? A. Yes, sir; after—

Q. Conkright didn't even ride with you where he helped you out of the mud up to Bill Morris' house? A. No, sir.

Q. He walked? A. Yes, sir.

Q. Behind the car or in front of it? A. Behind the car.

Q. He stayed with you until you got out of the mud hole, and then you went on up to Bill Morris' house. A. I stopped just before I got to Bill Morris' house.

Q. And he caught up with you? A. Yes, sir.

Q. And then told you how to get into Bill's? A. He said he would get me some gasoline.

Q. Oh, you had to have some more gasoline, did you? A. Yes, sir.

Q. And you drove the car yourself? A. Yes, sir.

Further, witness testified it was about a half-mile or a mile from the mud hole up to Bill Morris' house; that he did not know just exactly how far it was; that when he drove the car up to Bill's that evening he intended to go to Parsons the next day, but afterwards decided he would wait until Saturday; that he put the car behind the barn because it was dry back there; that they were not in the habit of driving cars around behind the barn; that if he had left the car on the other side of the barn, it would have been in front of the house where Morris drove in and out; that Conkright was not watching him when he put the car behind the barn; that he did not suppose Conkright knew that he was working on the engine numbers of the car; that the stranger from whom he got the car told him it would be necessary to work on the numbers; that the stranger did not tell him to stop and get Bill Morris

and Conkright to help him; that he never knew Bill Morris before that time; that he never told Conkright where he was going to take the car; that Conkright asked him, but he told Conkright he was "going up the line a ways"; that the file he used on the numbers was found in the car; that he did the filing there at Morris' behind the barn; that he thinks that Conkright was in the house at the time. Thinks Conkright was carrying a Winchester gun when he met him; that he took a casing off the car and put another one on there at Bill Morris'; that the casing he took off was rim cut. Witness denied that he told the county attorney and Cansdale and Charley Heady that the first time he met Conkright was in Sam Cobbs' rooming house at Nowata the evening before Thanksgiving.

In rebuttal the state offered the witness J. A. Cansdale, who testified that Glen Roy, in a conversation with him, stated that the first time he had met Conkright was at Sam Cobbs' place in Nowata. Also several witnesses were introduced from the vicinity of Centralia, Okla., who testified the defendant Conkright had lived there for about twelve or thirteen years up until about two years prior to that time, and that his general reputation for truth and veracity in the neighborhood of Centralia was bad. Conkright also admitted that he had served a term in the penitentiary on a plea of guilty to a felony.

It appears that the codefendant Glen Roy was impeached by his admissions made out of court contrary to his testimony in court. The story he first told about his connection with the car was that the defendant Conkright overtook him between the city of Nowata and Delaware, Okla., and that Conkright was at that time driving the stolen car. On the witness stand Roy changed this statement and testified that a total stranger to him overtook him between the city of Nowata and Delaware, Okla., driving this stolen car, and without further ceremony

turned the car over to him to deliver to some unknown person in the city of Parsons, Kan. The latter story is so unreasonable and so contrary to human nature as to be absolutely unbelievable. Certainly no sane and intelligent jury would be bound to believe as true a story so incredible as that detailed by Roy. Roy afterwards pleaded guilty to the larceny, yet under his statement he had nothing to do with the original taking. Conkright admits that he was in Nowata on the day of November 27th, that he was at Sam Cobb's rooming house, that he may have seen his codefendant Roy there on that occasion, and probably did talk to Roy "in a general way."

Summarizing the circumstances and admissions by these defendants, we have the following state of facts: Conkright and Roy were together in the city of Nowata on the afternoon of the day that the car was stolen. On the next day after the car was stolen, Conkright and Roy are together on a public highway not far from the town of Edna, Kan., and the stolen car is there. Together they took this car to the home of Bill Morris near where it was first seen after its larceny. They stay together at the home of Bill Morris for 24 hours and were both there at the time of their arrest. From the time the stolen car is first seen after the larceny until its recovery by the sheriff neither Conkright nor Roy abandon it; where the car goes there also go Conkright and Roy. Some time between the commission of the larceny and the arrest of these parties somebody had attempted to file the engine numbers off of this car. As heretofore stated, the explanation Roy makes concerning the manner in which he came into the possession of this car is absolutely incredible and unbelievable. We think that the same may be said of the explanation that Conkright makes concerning his presence at the car and at Bill Morris'. From all these circumstances, contradictory statements, admissions, and impeachments, we think it clear that the jury was

authorized to infer and to conclude that these defendants stole the car in question on the night of November 27, 1918, from the garage of S. A. Taylor in the city of Nowata and together drove it to the place where they were found on the morning of the next day.   Their possession was very recent after the car was stolen, and their explanations of that possession are not consistent with their innocence but lead clearly to the inference that each was guilty of the larceny.   We think this evidence, with the proper inferences and deductions, is such as to exclude every reasonable hypothesis except that of the guilt of this defendant, and for that reason we decline to disturb the verdict and judgment on the ground of the insufficiency of the evidence.

One of the briefs contains an additional ground for a reversal of the judgment, to wit, that the court erred in overruling the demurrer to the information.  The information charges in substance that—

On or about the 28th day of November, 1918, "E. E. Conkright and Glen Roy, then and there being did then and there feloniously and by stealth take, steal and carry away from the premises of S. A. Taylor in the city of Nowata, Nowata county, Okla., the personal property, to wit, one Ford touring car of the value of $400.00, then and there the personal property of S. A. Taylor and in the possession of the said S. A. Taylor. The said taking, stealing and carrying away of said property being then and there without the knowledge or consent of the said S. A. Taylor and against his will and consent and with the intent then and there existing in the minds of the said E. E. Conkright and Glen Roy to deprive the said S. A. Taylor thereof and to convert the same to their own use."

It is contended that because the information does not charge that the defendants Conkright and Roy were acting together in the said larceny, it is necessary that the information go further and state the facts showing that the parties

acted together in the commission of the offense. We think such allegations of fact unnecessary. The information jointly charges these defendants with the larceny of one piece of property, at one time, from one owner, and under such circumstances an allegation that they were acting together, or statements of fact showing that they were acting together, would be unnecessary and surplusage. The acts constituting the offense are stated in ordinary and concise language and in such a manner as to enable a person of common understanding to know that the pleader intended to charge both Conkright and Roy with the joint commission of but one larceny. The information was sufficient to apprise the defendant Conkright of the nature of the offense charged and the particular circumstances of its commission, and was sufficient to authorize the court to pronounce judgment on a conviction according to the right of the case.

For reasons stated, the judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.